Good morning. May it please the court. David Menninger for defendant Livia Santos Pinheiro. And I am going to intend to reserve four minutes of my time for rebuttal, but I'll keep an eye on the clock. This court asks the parties to address whether there's any conflict with my current representation of Ms. Pinheiro. I filed a 28-J letter with the authorities that I believe indicate that there is no conflict. The government has also filed a 28-J letter indicating that they also believe that disqualification is not necessary. I'm happy to answer any questions. Yes, Your Honor. No, I just – and the reason why I'm asking these questions is because I feel we have a duty to make sure that we have conflict-free counsel at all stages. Of course. So I have a series of questions for you. Absolutely. So just hang with me here. So in this case, are you arguing that trial counsel, Ms. Wong, was ineffective? Yes. Yes, we argued that. The district court, interestingly, found that there were extraordinary and compelling reasons, but indicated that he did not believe – or the trial court indicated that he did not believe that there was ineffective assistance. But our argument was, yes, that there was ineffective assistance. And your argument is to our court that she was ineffective? Your Honor, I don't think that's really at issue on appeal, given that the district court found that there were extraordinary and compelling circumstances. This is why I'm asking these questions. Are you arguing to this Court today that Ms. Wong was ineffective? Yes, I believe she was ineffective. Okay. Because that's not in your opening brief. It's not because the district court decided the greater issue in our favor. Right? The district court said, I think that there are extraordinary and compelling reasons to reduce the sentence. Right. Meaning that the district court thought that there – at least probably thought that there was ineffective assistance, but that the statute precluded the relief you were seeking. I agree with the latter part of that, Your Honor. But I would just – it was interesting what the district court said. The district court said, right, I believe there are extraordinary, compelling circumstances. But at the hearing, the district court said, and this is at ER 13, I don't think that trial counsel was ineffective. But he said, had the district court known that this would have been an issue for her in immigration proceedings, I would have given her the 364 days. So district court – we said, yes, that is among the extraordinary and compelling circumstances. Right? Or reasons. That's a holistic – you know, that looks at the totality of the circumstances. Among those, one of the things that we pointed out was, yes, trial counsel had made an error that was unreasonable. I put in a declaration from myself saying – and that's at ER – I believe it is ER 301, 302 – saying I am the person in our office who is responsible for making advisals. Of course, I was not at the office at the time Ms. Pinheiro was sentenced. And I believe this was unreasonable for her to request that sentence. So let me ask you – I'm sorry, Judge Owens, did you want to continue? Well, I did have a follow-up question. I don't want – I don't mean to cut you off. But – so, okay, so we've established that you are arguing that Ms. Wong was ineffective. I am, yes. Okay. So – and your client is not in custody, correct? She is not, no. Okay. So in light of the fact that you're saying counsel was ineffective, and in light of the fact that your client is not in custody, it seems to me the case – the best argument you can make is the Kwan case. I know this because I was the AUSA on Kwan. All right? So I lived through that case. And Kwan is exactly the same, as I see it, as this case. Yet you're not making the Kwan argument. You're not making the Quorum Novus argument. You're making this other argument. Now, I'm not saying you're wrong to make this other argument because you've got to be creative as defense counsel. I appreciate that. But why are you not making the Kwan argument when Kwan was cited to the district court, and that's basically the argument your client made when she was going pro se? I'm doing that, Your Honor, because I – this Ms. Pinheiro filed prior to the sentence modification motion that I filed. She tried, and based on the district court's ruling in those cases, we did not think that there was an avenue for an error quorum novus petition being successful in the district court, based on how the district court had rejected her previous pro se attempts. So you analyzed it and concluded that as a merits thing it wasn't even worth bringing to our court? We – our judgment was that it was in the trial court. I mean, obviously we were not correct, but we thought we had a better chance of succeeding on the sentence modification motion that we brought, based on the trial court's prior rulings on her pro se filing. Okay. Because, again, I just want to make sure that the reason why you did not bring the argument was because there was any concern about making Ms. Kwan look bad – I mean, Ms. Huang look bad under Kwan. No, there was not. And, again, I would point to my declaration where I said I believe that that was an unreasonable decision for her to make. Okay. All right. I guess I'd like to, if I may, to question that, because at the time the decision was made to ask for a slightly longer sentence, there were three aggravated felonies on your client's record. And the only – the only practical thing, it seems to me, to do is to say, well, I can't protect you from immigration consequences at this time, but I can get you a little bit shorter time in jail by giving you some good time credits. So why isn't that a reasonable course of action, given what was known and what the law was at the time? Sure, Your Honor. As I stated in my declaration, I believe that the reasonable course in every circumstance, even if a client has another aggravated felony, is to avoid, if possible, getting another one. And we know it was definitely possible. I mean, the district court said later that, yeah, I would have done this had I known at the time. So the reason why I believe that reasonably counsel should always try to avoid getting an aggravated felony, even if there's another aggravated felony under the law at the time, is, as this Court knows, sometimes things can change. But would every reasonable lawyer make that, or is that a permissible strategic decision at the time? Your Honor, at the very minimum, if it's going to be a strategic decision, it should be something that's discussed with the client. And Ms. Pinheiro put in a declaration that said she had she known that this would have made a difference, that she would have willingly sacrificed the person that did it. And she known it would make a difference is different than whether it was discussed with her at the time, because if counsel had said to her what I'm saying to you, listen, right now you have these two other aggravated felonies. I can't protect you from that, but I can get you a little less time in jail. Is that okay? So what she said in her declaration, Ms. Pinheiro's declaration, which was not challenged, she said, had I known, I would have told my attorney to request the shorter sentence. I'm sorry. But had she known what would happen later, that's a different question. No, I think what she said in her declaration was, had I known that there was this critical difference between 364 days and 366 days, I would have asked for 364 days. Had I known what that immigration law had, that distinction. But again, I think the question of whether there was IAC before this Court is not really critical, because the district court said, I find that there are extraordinary and compelling reasons, even though I don't think that there's IAC. So I don't think that this Court really needs to decide whether there's IAC or whether there are extraordinary and compelling reasons more broadly, right? This Court has said over and over again, that phrase gives a good deal of discretion to the district court. So unless the Court has any other questions on that point, I'd like to turn to where I think the district court erred, which was reading into the statute a prohibition on modifying completed sentences that cannot be found in the statute's text. Has any court so held under the First Step Act? I'm not aware. I'm not aware of any court so holding. But I think that follows precisely from what this Court held in Chen. Chen said, relying, you know, we're reading the Supreme Court's recent decision in Concepcion, said, we are not going to read a limitation into this statute, the same statute, that does not exist in the text. What the Supreme Court said in Concepcion, drawing meaning from silence is particularly inappropriate in the sentencing context. And actually, in Concepcion, they're talking about sentence modification context. Nowhere does this statute say that you can't — that a court cannot modify a completed sentence. Congress knows how to write — It's implicit, though, isn't it? Because the way it's structured, as I understand it, the motion can be made by the director of prisons, which doesn't make any sense if you're not in prison, and it can be made by the individual if the individual has exhausted the prison system, which, again, sounds like they're in prison. Well, on the exhaustion point, I would first point out the government has forfeited any claim that Ms. Pinheiro did not exhaust. Ms. Pinheiro sent a request through counsel to the warden of the facility where she served as counsel. I'm not — I'm talking now about statutory interpretation, not about her actions. I don't disagree with what you're saying. But just structurally, it makes it sound like the whole point of it is to deal with a person who is incarcerated and how they are to proceed in that context. Sure, Your Honor. What I would say on that is that, A, I think that the BOP's administrative grievance process does have a role, does accept complaints from former prisoners. There's a regulation that's cited in our briefing that says that. So, again, Ms. Pinheiro is not a stranger to the BOP, and she is not a stranger even to the administrative grievance process. I think that's a distinction, a critical distinction, between our case and the Fowler case, which the government has relied on. In that, in Fowler, the person had never even gone in — set foot in BOP custody and was a complete stranger to the department, whereas in our case, Ms. Pinheiro is definitely not a stranger to the BOP. But what about the language in the First Step Act that says that a judge can reduce the unserved portion of the original term of imprisonment? How do you square that with your argument? Sure, Your Honor. And if I may, let me quote exactly what the statute says. The statute says the court may reduce the term of imprisonment, parentheses, and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment. So what that is saying, by the last antecedent rule, is that the — whatever new term of probation or supervised release cannot exceed the unserved portion. The statute does not say that the reduction cannot exceed the unserved portion. I see I have about three minutes. Unless the Court has further questions, I'd prefer to reserve. Got it. And we'll round up to three. Thank you. Morgan Cohen on behalf of the United States, and may it please the Court.  that claim is not before the Court now because the district court expressly said that it is not finding an effective assistance of counsel. And I think that relates to the first issue that I would like to address, which is the mootness issue. So the standard there is whether or not an appellate court can give the appellant any effective relief. And here, no such relief can be given. That is, even if this motion is granted, it would not have the effect of removing the aggravated felony from the defendant's record. And I will explain that. The relevant — Excuse me, though. Let me — if there were ineffective assistance of counsel, would that affect the possibility of coram nobis relief? There was a request for coram nobis relief in this case. I understand that. I'm just asking — you're saying there's no way to have effective relief, even if there was ineffective assistance? And I guess I'm asking about that. The point I was building to is that the only relief that the court could grant by granting the compassionate release motion is equitable relief. The court would essentially be saying, had I imposed the sentence that was two days shorter, this aggravated felony would not be on the defendant's record. It is simply unfair, for lack of a better word. It's inequitable. The reason why this lack of ineffective assistance of counsel is important is because it shows that whatever the district court could grant, it would not be something that affects the procedural or substantive validity of the underlying conviction. And that is what brings us to the relevant test for immigration purposes, which was set forth in re-pickering and more recently affirmed in the matter of Thomas. And the test is, if a conviction is vacated for rehabilitative or immigration reasons, then it remains valid for immigration purposes. Whereas, if it is vacated because of some procedural or substantive infirmity, it would not. So here, ineffective assistance of counsel is off the table. The most that the district court could grant in the hypothetical world in which the motion is granted is a finding based on the equities. And that, based on the test that I just referred to, would mean that the conviction, the aggravated felony conviction, would stay for immigration purposes, which goes to mootness. Because even if the relief is granted here or the relief that the defendant requests, the outcome would be the same. In other words, this court cannot grant effective relief. So that is why the government's first argument is that this appeal is not even properly before the court because it is moot for those reasons. Does that come from a Homeland Security regulation or a decision of the immigration court? Where does that language come from, that they're not going to consider this type of request for relief? It comes from two places. So the Thomas decision was an attorney general decision, but it does incorporate the relevant statute, which is 8 U.S.C. 1101A48B. And that also says, essentially what the test that I summarized is, that the original sentence is what matters for immigration purposes, regardless of a subsequent suspension, unless the sentence was suspended or vacated or withdrawn for some sort of legal defect. And I think it's important to distinguish the sort of relief the case could grant, the district court could grant here, which would be purely equitable, with what the state court did with defendants' other two aggravated felonies. So there, the California Superior Court said that, based on section of the Penal Code 1473.7, the two other aggravated felony convictions, one for robbery, one for receipt of stolen goods, those sentences were invalid. And the statute that the court cited to make that decision specifically says that you can challenge a conviction or sentence, and such a conviction or sentence will be legally invalid if the court finds prejudicial error damaging the moving party's ability to meaningfully understand the charges, et cetera. So that finding of legal invalidity is why the state convictions arguably would not count as aggravated felonies. But the court, even in the world where the district court granted defendants' motion, could not and would not make such a finding. That's why I'm still asking, and maybe erroneously on my part, about quorum nobis. If there had been ineffective assistance of counsel in asking for the 366 days instead of 364 days, would quorum nobis relief be available? I think it could have been, had the defendant filed such a motion when she was still in or when she was outside of government custody. But because... Can you file it now? Yeah. If not, why not? Because there's already been a successive, it would be a successive petition, and it would be, I think, barred for that. Well, it wouldn't come under 2255 because she's not in custody. So I think the question is whether it would be declared an abuse of the writ for her to have filed it a second time. And I know that's not before us, and that's why I was asking defense counsel about that, because that's how I think this case, what this case really is. But Pete has it made. I don't know the answer to that, but to bring it back to what I was saying before, I think that underlines how whatever relief the district court could grant, it would have no effect for immigration purposes, which is why the matter is moot. And putting mootness aside, I think there are, you know, going to the merits, there are ample reasons to affirm the district court. The defense counsel mentioned FOWR. In our view, FOWR is conclusive of this appeal. In FOWR, this court said that where a defendant hasn't begun to serve his sentence, he's not eligible for compassionate release because he didn't meet the in-custody requirement. There is no principle distinction for or there is no principle basis for distinguishing between a defendant who is not in custody because he or she has not begun to serve his sentence versus a defendant who is not in custody because he or she has completed his sentence. In custody means in custody, and since the defendant here was not in custody when she filed her compassionate release motion, she is simply ineligible for compassionate release. And I would further note— There's no explicit custody requirement in that provision in the First Step Act, is there? That is correct. There is no explicit custody requirement, but the court interpreted the very language that we're focusing on here, may reduce the term of imprisonment, and then in parentheses may impose a term of probation and supervised release that does not exceed the unserved portion of the original term. The court has already interpreted that to mean or to say that the statute, that language, is the in-custody requirement. And as I said a moment ago, if that is how the statute is read by the court, there's no basis for distinguishing between a defendant who's not in custody because they haven't begun to serve their sentence versus one who is not in custody because they've already completed their sentence. In both cases, there is no unserved portion of the term by which to reduce the term. The term of what? The term that someone is supposed to be currently serving in custody. And I would note that based on what the court has said in Chen about there really being pretty minimal restrictions on how to interpret the phrase extraordinary and compelling, if you couple that with defendants' proposed reading of the statute, which jettisons the in-custody requirement that the court found in Faur, then the compassionate release statute will become what this court has said it shouldn't be, and that is a plenary resentencing procedure. Additionally, going to the type of relief that the defendant is requesting, if it is to be construed as an ineffective assistance of counsel, that really is an attack on the validity of the conviction or the sentence. And for those reasons, the proper way to construe that is as a habeas petition. And five other circuits have said that the compassionate release statute is not an appropriate vehicle for bringing such a claim. This court also affirmed a district court's denial, albeit in an unpublished opinion, finding the same thing, that where you have a collateral challenge to a conviction, it is not procedurally proper to bring that claim through the compassionate release statute. And the government is not trying to have it both ways here. It is the substance of the request that governs. This is what the Fourth Circuit said in the Ferguson decision, which we cite in our papers, the substance of the request. So where the request is, ineffective assistance of counsel, for example, that needs to be treated as a collateral attack, and therefore it should be brought via 2255. The relief that the court can grant is what resolves the immigration question and the mootness issue. So unless the court has any specific questions, the government would submit on its papers. I do not. All right, thank you, counsel. Thank you. Thank you, Your Honors. Unless the court would like me to address anything else first, I'll turn to the mootness point. This is not moot. A, the district court has not granted the reduction, right? And we don't know exactly what the court would say if he were to grant the reduction. While the court did say there was no IAC, he did not say that there was no legal error. And opposing counsel brought up the California statute 1473.7 as a type of post-conviction vehicle that would be a legal error that would be recognized in immigration court. Well, 1473.7 does not require a showing of ineffective assistance of counsel. It says it is a prejudicial error if the defendant does not understand the immigration consequences, but it does not, the California courts do not require a showing of a Strickland or a Padilla error. So this court does not need to decide precisely how an immigration court would view a hypothetical reduction that hasn't happened yet. And, in fact, that's exactly what the Supreme Court said some 70 years ago in the Fiswick case, which was specifically about this issue about mootness on a post-conviction challenge when there is a threat of deportation. The Supreme Court says we don't need to decide right now in this collateral way how exactly immigration courts are going to view this conviction. It's enough that the hazard of deportation is real, and the hazard of deportation certainly is real for Ms. Pinheiro. Her case at the time of briefing was before this court. This court has since remanded it back to the BIA. So if there's any other questions, not any other questions on mootness, I would go back to this point. Opposing counsel said in custody means in custody. I agree with that. Actually, I agree with that wholeheartedly. Congress wants in custody, wants to put that restriction on a post-conviction vehicle like they did with 2254, like they did with 2255. They put the words in custody in the statute. The words in custody do not appear in the statute. The district court, and I think also opposing counsel, are looking at these places. Well, maybe you could read this. Maybe this is implied. And I don't think we need to do that. Congress knows how to put this kind of restriction on a post-conviction statute, and they have not done so in this case. So for that reason, I would ask the court to reverse the district court's denial of the sentence modification and remand for further proceedings. Thank you very much, counsel. Thank you. Thank you both for your patience in this case. It's had some twists and turns. We appreciate both your brief and the argument. This matter is submitted, and we are adjourned. Thank you, everybody. Thank you. All rise. All rise. This court for this session stands adjourned.
judges: GRABER, OWENS, Tunheim